# EXHIBIT A



## The University of the State of New York

### The State Education Department
### State Review Officer

No. 06-009

**Application of the BOARD OF EDUCATION OF THE CARMEL CENTRAL SCHOOL DISTRICT, for review of a determination of a hearing officer relating to the provision of educational services to a child with a disability**

**Appearances:**

Kuntz, Spagnuolo, Scapoli, & Schiro, P.C., attorney for petitioner, Jeffrey J Schiro, Esq., of counsel

Mayerson & Associates, attorney for respondent, Gary S. Mayerson, Esq., of counsel

### DECISION

Petitioner, the Board of Education of the Carmel Central School District, appeals pursuant to section 279.10(d) of the Regulations of the Commissioner of Education from an impartial hearing officer's interim decision determining the child's pendency placement for the duration of a due process proceeding in which the child's parents are challenging the appropriateness of the individualized education program (IEP) recommended by petitioner's Committee on Preschool Special Education (CPSE) for their child for the 2005-06 school year. The impartial hearing officer determined that the child's pendency placement was the early intervention services contained in the child's 2004-05 individualized family service plan (IFSP). The appeal must be sustained.

Respondents' daughter was 3 1/2 years old at the time of their request for a due process hearing, and was preparing to transition from early intervention services into an appropriate preschool program in one of petitioner's schools (see Pet. Ex. B). Respondents' daughter was reportedly diagnosed with "Autistic Disorder, Verbal

JAN-04-2008 FRI 04:04 PM　　　　　　　　　　FAX NO.　　　　　　　　　　　P. 03
Case 1:07-cv-09532-GEL　　Document 4-2　　Filed 01/04/2008　　Page 3 of 10
JAN-04-2008 FRI 11:47 AM　SHAW PERESON　　　　　　FAX NO. 16454864268　　　　　P. 003/010

SRO Decision 06-009　　　　　　　　　　　　　　　　　　　　　　　Page 2 of 9

Apraxia, Auditory Processing Disorder" (Pet. Ex. B at p. 2). The record is sparse, but indicates that the child received early intervention services pursuant to an IFSP from September 2003 up until at least March 2005, just prior to her turning three years old and aging out of the early intervention program (see Ans. Ex. A). Her latest 2004-05 IFSP included, *inter alia*, applied behavioral analysis (ABA) instructional services, as well as related services consisting of speech/language therapy, occupational therapy, and physical therapy, some of which were provided in the home and some of which were provided during half-day sessions at the PARC Preschool (see Ans. Ex. A).

In February 2005 petitioner's CPSE conducted an initial evaluation on respondents' daughter, which included an educational evaluation, a psychological evaluation, a speech/language evaluation, a physical therapy evaluation, an occupational therapy evaluation and a social history (see Pet. Ex. A at p. 3). The CPSE met on three separate occasions between March and August 2005 to develop an appropriate preschool program for respondent's daughter for the 2005-06 school year (Pet. ¶ 6; Ans. ¶ 3; see Pet. Ex. A). Respondents' daughter turned three years old in April 2005 (see Pet. Ex. A). The CPSE reconvened in August 2005 for a "program review" to address the results of a new neuropsychological evaluation, and adjusted the child's 2005-06 IEP accordingly (see Pet. Ex. A at p. 3). The August 8, 2005 IEP reveals that respondents' daughter was classified by the CPSE as a child with a disability and placed in a 6:1+2 special education classroom for a full day at the PARC Preschool with an individual aide, and provided with additional services in the home consisting of nine hours per week of individual ABA/special education itinerant teacher (SEIT) services, one hour twice per month of indirect SEIT services, one hour twice per month of parent speech training, and an individual aide in the home six hours per week (Pet. Ex. A). The IEP included goals and objectives in study skills, speech/language skills, social emotional skills and motor skills (id. at pp. 3-6). The IEP provided no program modifications, no assistive technology devices and no extended year services (id.).

By letter dated September 14, 2005, respondents objected to the 2005-06 preschool IEP, and requested a due process hearing (Pet. Ex. B). Prior to the hearing, respondents sought a pendency order requiring petitioner to continue the child's early intervention services as defined in the child's 2004-05 IFSP for the duration of the due process proceedings. The impartial hearing officer requested pre-hearing briefs on the issue (see IHO Decision at p. 2), and on December 27, 2005 the impartial hearing officer rendered an interim order in favor of respondents, finding the child's pendency placement to be the program contained in the 2004-05 IFSP, and ordering the district to pay for those services for the duration of the proceedings (see IHO Decision). Petitioner appeals the interim decision, asserting that, since this was an initial educational placement under the Individuals with Disabilities Education Act (IDEA), the child's only possible pendency placement is the educational placement recommended in the 2005-06 IEP.

Part C of the IDEA[1] allows infants and toddlers with disabilities under the age of 3 to receive early intervention services based on their developmental needs provided in

JAN-04-2008 FRI 04:04 PM　　　　　　　　　　　　　FAX NO.　　　　　　　　　　　P. 04
Case 1:07-cv-09532-GEL　　Document 4-2　　Filed 01/04/2008　　Page 4 of 10
JAN-04-2008 FRI 11:48 AM　　SHAW&PERESON　　　　FAX No. 18454884268　　　　　　P. 004/010

SRO Decision 06-009　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3 of 9

accordance with an IFSP (see 20 U.S.C. §§ 1431-1444; 34 C.F.R. § 303.340). Under Part B of the Act, participating states must make available to children with disabilities, beginning at the age of 3 and generally continuing until the age of 21, a free appropriate public education (FAPE) based on their educational needs (see 20 U.S.C. § 1412[a][1][A]; 34 C.F.R. § 300.121[a], [c]; see generally 20 U.S.C. §§ 1411-1415, 1419), which includes special education and related services, provided in accordance with an IEP (20 U.S.C. § 1401[8][D]; 34 C.F.R. § 300.13; see 20 U.S.C. § 1414[d]; 34 C.F.R. § 300.347). The IDEA contains provisions to ensure that children moving from early intervention services into a preschool program experience a "smooth and effective transition" (20 U.S.C. § 1412[a][9]; 34 C.F.R. § 300.132). Generally, a child's eligibility for early intervention services ends as of his or her third birthday (see 20 U.S.C. § 1432[5][A]; 34 C.F.R. § 303.16[a]); however New York State law provides that children in early intervention programs who are evaluated by the district's CPSE before their third birthday and found to be eligible for preschool educational services under the IDEA, and are born during the months of January to August, can, at the parents' request, remain in the early intervention program until September 1st of the year in which they turn three (N.Y. Pub. Health Law § 2541[8][a][i]). In addition, for children between the ages of 3 and 5 who are transitioning from early intervention services into a preschool program, the IDEA allows the option of having the IFSP serve as the child's preschool IEP if consistent with State policy and agreed to by both the agency and the child's parents (see 20 U.S.C. § 1414[d][2][B]; 34 C.F.R. § 300.342[c]). New amendments were recently added to the IDEA that allow states to create a system whereby, instead of a preschool IEP, parents of children with disabilities can unilaterally opt to continue early intervention programs and services until the child enters elementary school, but in those instances the Act requires that the IFSP must include "an educational component that promotes school readiness and incorporates preliteracy, language, and numeracy skills" (20 U.S.C. § 1435[c][2][B]).[2]

The pendency provisions of Part B of the IDEA and the New York State Education Law require that a child remain in his or her "then current educational placement," unless the child's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the child (20 U.S.C. § 1415[j]; 34 C.F.R. § 300.514; N.Y. Educ. Law § 4404[4]). Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships; Drinker v. Colonial School Dist., 78 F.3d 859 [3d Cir. 1996]; Zvi D. v. Ambach, 694 F.2d 904 [2d Cir. 1982]). The purpose of the pendency provision is to provide stability and consistency in the education of a child with a disability (Honig v. Doe, 484 U.S. 305 [1987]). It does not mean that a student must remain in a particular site or location (A.W. v. Fairfax Co. Sch. Bd., 372 F.3d 674, 682 [4th Cir. 2004]; White v. Ascension Parish Sch. Bd., 343 F.3d 373, 379 [5th Cir. 2003]; Concerned Parents and Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ., 629 F.2d 751 [2d Cir. 1980], cert. denied 449 U.S. 1078 [1981]; Application of the Bd. of Educ.,

JAN-04-2008 FRI 04:05 PM                    FAX NO.                    P. 05
Case 1:07-cv-09532-GEL    Document 4-2    Filed 01/04/2008    Page 5 of 10
JAN-04-2008 FRI 11:48 AM    SRO/CHAIRPERSON    FAX No. 18454864268    P. 005/010

SRO Decision 06-009                                              Page 4 of 9

Appeal No. 99-90), or at a particular grade level (<u>Application of a Child with a Disability</u>, Appeal No. 95-16; <u>see</u> Child's Status During Proceedings, 64 Fed. Reg. 12615 at 12616 [Mar. 12, 1999]).

In the present case, the dispute arises from the wording of the pendency provision contained in Part B of the IDEA which states:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

(20 U.S.C. § 1415[j]; <u>see</u> 34 C.F.R. § 300.514; N.Y. Educ. Law § 4404[4][a]; 8 NYCRR 200.5[m]).

Respondents focus on the first clause of this provision and claim that petitioner is required to maintain their daughter in her "then-current educational placement," which they argue is her last IFSP, during the pendency of these proceedings. Petitioner focuses on the second clause of the provision, maintaining that since respondents' daughter is applying for "initial admission" to a public school, that the only pendency placement that is available is the proposed public school program recommended in the 2005-06 IEP, with parental consent. This issue has received little attention by the courts (see <u>Pardini v. Allegheny Intermediate Unit</u>, 420 F.3d 181 [3d Cir. 2005] [finding IFSP to be pendency placement]; <u>D.P. v. Sch. Bd. of Broward Co. Fla.</u>, 360 F.Supp.2d 1294 [S.D. Fla. 2005] [finding preschool IEP to be pendency placement]; see also <u>Johnson v. Special Education Hearing Office, State of Cal.</u>, 287 F.3d 1176 [9th Cir. 2002] [without deciding whether the IFSP was properly determined to be the child's pendency placement, determined that district could use a different service provider than in the IFSP for pendency purposes]), and is in fact an issue of first impression in the Second Circuit and New York federal district courts.

Under the IDEA, the pendency inquiry in most cases focuses on the first clause of the pendency provision which seeks to identify the child's "then-current educational placement" (<u>Zvi D.</u>, 694 F.2d at 906). The Second Circuit has noted that,

> Although the IDEA does not define, and our Circuit has not previously considered the meaning of, the term "then-current educational placement," our sister circuits have interpreted the term to mean: (1) "typically the placement described in the child's most recently implemented IEP," (<u>Johnson v. Special Educ. Hearing Office</u>, 287 F.3d 1176, 1189 [9th Cir. 2002]; (2) "the operative placement actually functioning at the time ... when the stay put provision of the IDEA was invoked," (<u>Drinker v. Colonial</u>

JAN-04-2008 FRI 04:05 PM　　　　　　　　　　　FAX NO.　　　　　　　　　　　P. 06
Case 1:07-cv-09532-GEL　　Document 4-2　　Filed 01/04/2008　　Page 6 of 10
JAN-04-2008 FRI 11:48 AM　SHARI&PERSON　　　　FAX No. 18454864268　　　　　P. 006/010

SRO Decision 06-009　　　　　　　　　　　　　　　　　　　　　　　Page 5 of 9

Sch. Dist., 78 F.3d 859, 867 [3d Cir. 1996]; and (3) "[the placement at the time of] the previously implemented IEP," (Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 [6th Cir. 1990]).

(Mackey v. Bd. of Educ., 386 F.3d 158, 163 [2d Cir. 2004]; see Bd. of Educ. v. O'Shea, 353 F.Supp.2d 449, 456 at n.10 [S.D.N.Y. 2005]).

Similarly, the U.S. Department of Education has opined that a child's then current placement would " ... generally be taken to mean current special education and related services provided in accordance with a child's most recent individualized education program (IEP)" (Letter to Baugh, 211 IDELR 481 [OSEP 1987]; see, Susquenita, 96 F.3d at 83 ["last functioning IEP"]; Drinker, 78 F.3d at 867 [same]; Gregory K. v. Longview School Dist., 811 F.2d 1307 [9th Cir. 1987]). It is undisputed in the present case that respondents' daughter had no prior IEP, and at the time respondents invoked the pendency provision of the IDEA on September 14, 2005, the child had aged out of early intervention services and was not receiving any services or in any 'operative placement' (see Pet. Ex. B at pp. 2-3).

In the official commentary to the implementing regulations to the IDEA, the United States Department of Education specifically addresses the issue of transitioning from early intervention services to an initial preschool IEP and states that,

> The pendency provision at § 300.514[a] does not apply when a child is transitioning from a program developed under Part C to provide appropriate early intervention services into a program developed under Part B to provide FAPE. Under § 300.514(b), if the complaint requesting due process involves the child's initial admission to public school, the public agency responsible for providing FAPE to the child must place that child, with the consent of the parent, into a public preschool program if the public agency offers preschool services directly or through contract or other arrangement to nondisabled preschool-aged children until the completion of authorized review proceedings.

(Transition of Children From Part C to Preschool Programs [§ 300.132], 64 Fed. Reg. 12,406 at 12,558 [Mar. 12, 1999]; see Letter to Klebanoff, 28 IDELR 478 [OSEP 1997]).

The Office of Special Education Programs of the United States Department of Education (OSEP) is the agency charged with the principal responsibility for administering the IDEA (20 U.S.C. § 1402[a]). Substantial deference must be given to an federal agency's interpretation of its own regulations; the interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation" (Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 [1994] [internal citations omitted]; see Stinson v. U.S., 508 U.S. 36, 43-45 [US 1993] [includes agency's interpretive commentaries]; see, e.g., Honig v. Doe, 484 U.S. 305, 325 n.8 [1988][where

JAN-04-2008 FRI 04:05 PM       FAX NO.                         P. 07
Case 1:07-cv-09532-GEL   Document 4-2   Filed 01/04/2008   Page 7 of 10
JAN-04-2008 FRI 11:48 AM   SHARPERSON   FAX No. 18454864268         P. 007/010

SRO Decision 06-009                                          Page 6 of 9

IDEA was ambiguous, Court deferred to agency's interpretation in an OSEP policy letter, which comported with the purpose of the Act]; Hooks v. Clark Co. Sch. Dist., 228 F.3d 1036, 1040 [9th Cir. 2000] [defers to agency interpretation of IDEA in OSEP policy letter]; D.P. v. School Bd. of Broward Co. Fla., 360 F.Supp.2d 1294, 1298 [S.D. Fla. 2005] [defers to agency interpretation of IDEA]; Raymond S. v. Ramirez, 918 F.Supp. 1280, 1292-93 [N.D. Iowa 1996] [same]). An administrative body or reviewing court's task is not to decide which among several competing interpretations best serves the regulatory purpose; it must defer to the agency's interpretation unless "an alternative reading is compelled by the regulation's plain language or by other indications of the [agency]'s intent at the time of the regulation's promulgation" (Thomas, 512 U.S. at 512).

In the instant case, the United States Department of Education's interpretation of the federal regulation is clear and specific to the situation at bar, and is consistent with the plain language of the pendency provision (see D.P., 360 F.Supp.2d at 1298). While respondents focus on the "then-current educational placement" language of the provision, this language is only applicable to situations involving the first clause of the pendency provision, when a prior IEP has been in effect, and cannot be used to transform an IFSP into an educational placement. As noted, it is undisputed by the parties that respondents' daughter has never previously had an IEP, i.e., an "educational placement," under the IDEA. As indicated by the second clause of the statutory pendency provision, if the child is applying for initial admission to a public school, the statute recognizes that the child in that situation has no "current educational placement," and, rather than leave the child with no educational services during the pendency of the proceedings, the second clause of the provision allows for his or her placement in the proposed public school educational placement (the proposed IEP) as his or her pendency placement for the duration of the proceedings, if the parent consents.

This interpretation is also consistent with applicable New York State law and regulations. New York State law relating to the provision of special education services to preschool children with disabilities explicitly provides that "a preschool child not previously served pursuant to this section shall, if the parent agrees, receive services in the program designated by the board pursuant to [this section] which designation resulted in such appeal" (N.Y. Educ. Law § 4410[7][c][ii]). In addition, New York regulations on preschool children with disabilities require that the procedural safeguard notices provided to parents "indicate that during the pendency of any proceedings conducted pursuant to this part on behalf of a preschool student [not already receiving preschool special education services], if the commissioner or local board of education and the parent(s) or legal guardian agree, the preschool student may receive those special education programs and services approved pursuant to this section until all such proceedings have been completed" (8 NYCRR 200.16[h][3][ii]). In an analogous situation, New York State regulations recognize that the pendency provisions do not require that a child be left in a preschool program that he or she has aged out of as his or her pendency placement (see 8 NYCRR 200.16[h][3][i]), and the United States Department of Education has applied this same concept to pendency placements for children who have aged out of early

JAN-04-2008 FRI 04:05 PM　　　　　　　　　　　FAX NO.　　　　　　　　　　　P. 08
Case 1:07-cv-09532-GEL　　Document 4-2　　Filed 01/04/2008　　Page 8 of 10
JAN-04-2008 FRI 11:49 AM　　SHARPERSON　　　　　FAX No. 18454864268　　　　　P. 008/010

SRO Decision 06-009　　　　　　　　　　　　　　　　　　　　　　　　　Page 7 of 9

intervention programs (see Letter to Klebanoff, 28 IDELR 478 [OSEP 1997] ["OSEP does not interpret (the pendency provisions) as requiring a public agency responsible for providing a FAPE to a disabled child to maintain that child in a program developed for a two-year-old child as a means of providing that child and his or her family appropriate early intervention services under (Part C)"]).

The distinction between an early intervention program under Part C and an initial educational program provided under Part B is an important distinction. A school district's responsibility to provide a FAPE to a child under the IDEA (see 20 U.S.C. §§ 1400[d][1][A]; 1401[9]) is different from the responsibility of the lead agency (which in New York State is the Department of Health; see N.Y. Pub. Health Law § 2541[12]), to provide early intervention services (see 20 U.S.C. § 1432[4]). In order to provide a FAPE a school district must provide appropriate special education and related services to meet the educational needs of school-age children with disabilities in the least restrictive environment (see 20 U.S.C. § 1412[a][5][A]; 34 C.F.R. § 300.550[b]; 8 NYCRR 200.6[a][1]). By contrast, early intervention regulations require the lead agency to provide services to assist the family and meet an infant or toddler's developmental needs, to the maximum extent appropriate in natural environments, including the home and community (20 U.S.C. § 1432[4][G]; 34 C.F.R. § 303.12[a], [b]; N.Y. Pub. Health Law § 2541[7][c], [g]). The concept that the child's IFSP is not an "educational placement" under the IDEA is borne out by the fact that the new amendments to the IDEA direct that if under State policy a parent may choose to use an IFSP instead of an IEP for a child beyond three years of age until entrance to elementary school, that the IFSP in such instances must include an "educational component" (20 U.S.C. §§ 1435[c][2][B]; 1432[5][B][ii][I]). Thus, the Federal District Court for the Southern District of Florida and the majority of state administrative bodies that have considered the issue have found that when a child transitions from early intervention services into the public school system for the first time under an individualized education program, it is treated as an initial placement for pendency purposes, and, under the applicable pendency provision, the recommended IEP is the available pendency placement in such situations, should the parents decide to exercise that option (see D.P., 360 F.Supp.2d 1294; Hazlet Township Bd. of Educ., 4 ECLPR 639 [SEA NJ 2005]; Winston-Salem Forsyth Co. Bd. of Educ., 44 IDELR 146 [SEA NC 2005]; Huntsville City Bd. of Educ., 34 IDELR 278 [SEA AL 2001]; Prince George's Co. Pub. Schs., 3 ECLPR 224 [SEA MD 1998]).

Acknowledging that the Second Circuit has not previously addressed this issue, respondents rely on a recent Third Circuit case for support (see Pardini v. Allegheny Intermediate Unit, 420 F.3d 181 [3d Cir. 2005]). Reversing a district court decision, the Pardini Court held that, based on principles of a smooth transition to preschool and the underlying pendency principle of preservation of the status quo, early intervention services could serve as a child's pendency placement when a parent challenges a proposed preschool IEP (id.). This interpretation is consistent with administrative level decisions in the state of California (see, e.g., Capistrano Unified Sch. Dist., 4 ECLPR 438 [CA SEA 2003]; San Gabriel Unified Sch. Dist., 32 IDELR 248 [CA SEA 2000] [finding

that IFSP is the initial placement])[3] and Georgia (see, e.g., Dekalb Co. Sch. Sys, 33 IDELR 49 [SEA GA 2000]).

The reasoning in Pardini is not persuasive in the instant case for several reasons. First, the Pardini Court failed to address or give substantial deference to the United States Department of Education's interpretation of the federal regulations found in its accompanying commentary. The Pardini court did note the Office of Special Education Program's earlier stated opinion on the issue in Letter to Klebanoff (28 IDELR 478 [OSEP 1997]), but instead of giving it substantial deference, rejected it for its lack of "persuasiveness" and instead substituted its own interpretation of the federal regulation (Pardini, 420 F.3d at 190-91). The Third Circuit's interpretation is not only inconsistent with the Department of Education's interpretation as the agency charged with monitoring and enforcing the Act, it is also in direct conflict with explicit controlling New York State law and regulations pertaining to pendency placements of children transitioning into preschool programs from early intervention programs (N.Y. Educ. Law § 4410[7][c][ii]; 8 NYCRR 200.16[h][3][ii]). Pardini is also factually distinguishable from respondents' situation. The Pardini court placed great weight on "the operative placement actually functioning" at the time the dispute arose (Pardini, 420 F.3d at 192). In Pardini, at the time of the hearing request the child was still receiving early intervention services, while at the time of respondents' request for a hearing, their daughter was no longer receiving early intervention services (see Pet. Ex. B at pp. 2-3).[4] Lastly, Pardini reaches its conclusion in part on its reliance on the IDEA provisions that require the State to develop polices and procedures to ensure a "smooth transition" from early intervention services to preschool services (Pardini, 420 F.3d at 186, 190; see 20 U.S.C. §§ 1412[a][9]; 1437[9][A]). These provisions require the district to convene a conference with the parents and district personnel not less than 90 days prior to the child's third birthday to discuss eligibility for preschool special education services, to review the child's program options for the remainder of the school year, and to meet with the parents to establish a transition plan for the child to exit the early intervention program (see 20 U.S.C. § 1437[a][9]). In the instant case, there is no claim that petitioner failed to do this, and the limited record reveals that the district did timely meet with the parents several times prior to the child's third birthday, as required, to review the child's program options and to discuss and develop his plan for preschool services. Under these circumstances, the fact that the parents chose to unilaterally withhold their daughter from the recommended preschool program cannot be used to argue that the district failed to meet its obligations to ensure a "smooth transition" into the preschool program.

Parents who prefer to obtain private educational services instead of availing themselves of the option of placing their child in the district's preschool program during the pendency of the proceedings are free to do so, but they may not recoup such expenses on a pendency theory.

**THE APPEAL IS SUSTAINED.**

JAN-04-2008 FRI 04:06 PM　　　　　　　　　　　　FAX NO.　　　　　　　　　P. 10
JAN-04-2008 FRI 11:49 AM　SHAIRPERSON　　　　　FAX No. 18454864268　　　P. 010/010
Case 1:07-cv-09532-GEL　　Document 4-2　　Filed 01/04/2008　　Page 10 of 10

SRO Decision 06-009　　　　　　　　　　　　　　　　　　　　　　Page 9 of 9

     **IT IS ORDERED** that the hearing officer's interim decision regarding pendency is hereby annulled.

Dated:    Albany, New York
             March 20, 2006

                                             **PAUL F. KELLY**
                                             **STATE REVIEW OFFICER**

---

[1] The IDEA was amended effective July 1, 2005 (see Pub. L. No. 108-446, 118 Stat. 2647 [H.R. 1350] [2004] [codified as amended at 20 U.S.C. § 1400, et. seq.]). Since the underlying events in this appeal all occurred subsequent to that date, all references to the IDEA used herein refer to the newly amended provisions of the IDEA 2004, unless otherwise specified.

[2] New York State has not, as of the date of this decision, enacted legislation to implement this option of the IDEA.

[3] California cases rely in part on the fact that California law includes an IFSP in the statutory definition of an IEP (Cal. Educ. Code § 56032). New York State law has no similar provision.

[4] According to respondents' due process request, the child was not in any operative placement at the time the pendency provision was invoked, and it is uncertain if respondents are actually seeking pendency in the IFSP placement, or something else. Respondents state in their due process request letter dated September 14, 2005, that at the time of their request, their daughter was not receiving any services, and that they would be seeking to secure private services consistent with an evaluation they had obtained for their daughter by a doctor whose recommendations "exceed the services and levels that [their daughter] was receiving under Early Intervention" (Pet. Ex. B at p. 2). Respondents' letter stated that they "intended to implement the recommendations set forth [in the report], and look to the district to fund such recommendations" (id. at n.1). A parent is of course entitled to seek private educational services for their daughter at their own expense, but the district is not required to fund such services as pendency or "stay put" services if the services were neither offered nor provided to the child by the district in a program in the past.